CHARLES J. ABBOTT, *Adm'r, Pet'r in Eq. for the appointment of a Trustee.*

On June 20, 1825, Theodore Jones, by deed of warranty, duly executed and recorded, conveyed to Leonard Jarvis certain real estate situated in Ellsworth, in trust, and subject to certain mutual covenants and agreements contained in a written declaration of trust, of even date with the deed, signed by the parties and recorded. In accordance with one of the covenants, Leonard Jarvis, five days thereafterwards, by his will, appointed Charles Jarvis to be his successor as trustee, and devised to him, in trust, the premises specifically described in the abovenamed deed. On Sept. 11, 1840, Theo. Jones, by deed of warranty, duly executed and recorded, conveyed to Leonard Jarvis, " in trust, for the purposes mentioned in the" former deed, certain other described premises, in Ellsworth, " to have and to hold in trust as aforesaid, with all the privileges and appurtenances thereof to the said Leonard, his heirs and assigns forever." On Aug. 29, 1854, Leonard Jarvis, by deed of warranty, in consideration of one dollar, conveyed to Charles Jarvis, " all his [my] right, title and interest in and unto any lands in Ellsworth," and several other towns mentioned. On Nov. 14, 1863, Leonard Jarvis having deceased, Charles Jarvis, " in his own right and as executor of and trustee under the will of Leonard Jarvis," conveyed the premises mentioned in the deed of June, 1825, to Munroe Young. On Feb. 1, 1864, Charles Jarvis, by deed of release, conveyed to said Young " all the right, title and interest he [I] may have in his [my] own right, or as devisee, trustee or heir under the will of Leonard Jarvis, to the" premises described in the deed of Sept. 11, 1840, " not meaning to prejudice any right or interest which the heirs of Leonard Jarvis, or the heirs of Theo. Jones may have in the premises," " meaning to convey all the right, * * if any, I may have in my own right, as trustee as aforesaid :"— *Held,*

1. That, by accepting the deed of Sept. 11, 1840, Leonard Jarvis held the estate therein described as trustee;

2. That, neither by the will of Leonard Jarvis, nor by the deed of Aug. 29, 1854, did Charles Jarvis receive any title to the trust estate described in the deed of Sept. 11, 1840;

3. That the trust estate described in the deed of Sept. 11, 1840, remained in Leonard Jarvis until his death, when it descended to his heirs at law, subject to the same trusts as when the fee was in their ancestor;

4. That if the heirs holding the fee neglect or refuse to execute the trusts, they may, *it seems*, with the assent of the *cestuis que trust* and others interested, convey the trust estate to a new trustee mutually agreed upon, subject to the original trusts; and,

5. That the estate of Leonard Jarvis would be entitled to all its rights under the declaration of trust; and,

6. That all the persons interested must be made parties to a petition for the appointment of a new trustee.

After describing in his will the trust estate, and the covenants and agreements of the trust, one of which stipulated that the said Leonard may retain, out of the sales of the trust estate, a reasonable compensation for services and for all advances, Leonard Jarvis devised to Charles Jarvis, his successor, the trust property " as it may be at my decease, upon the aforesaid terms and conditions, and for the aforesaid purposes, — he paying or causing to be paid unto my heirs * * the sum, if any, due my estate from the" trust estate : — *Held*, that by accepting the trust under the will, Charles Jarvis was not bound to pay whatever sum the trust estate owed the estate of the testate; but that he should see that such of the trust funds as came into his possession should be appropriated to the payment of such sum.

PETITION IN EQUITY, brought by the administrator *de bonis non* of the estate of Leonard Jarvis, praying for the appointment of a trustee of a certain trust estate therein described.

The petition alleged substantially, that on June 20, 1825, Theodore Jones, late of Ellsworth, deceased, by his certain deed of trust of that date, duly executed and recorded, coupled with a certain instrument of trust, of same date, duly executed by Theodore Jones and Leonard Jarvis, and forming a part of the deed, for the purposes mentioned therein, conveyed to the said Leonard·a lot of land in Ellsworth, in this county, (described) ; that, by the terms of the trust, said Leonard Jarvis should retain from the proceeds of the sales of said land a reasonable compensation for

his services as trustee and for all his advances with interest; that said Jarvis should immediately make a will and therein appoint some person to succeed him as trustee at said Jarvis' decease, and devise to him the remaining trust; that Jarvis, on June 25, 1825, accordingly made and executed his will, therein appointed Charles Jarvis his successor, and devised to him the portion of such trust estate as should remain at said Leonard's decease; that Leonard deceased in 1855, when his will was duly probated, and Charles Jarvis accepted and executed said trust so far as related to the estate before mentioned.

That, after the execution of the trust deed and will, to wit, on Sept. 11, 1840, Jones acquired title to another lot of land in Ellsworth, and adjoining the former (described;) which, on the same day, he conveyed by deed of warranty to said Leonard, to be held subject to the same provisions and trusts in all respects as the former lot; that said Leonard made no devise of the latter lot, nor did he appoint any trustee for its management and sale, and at his decease, a large portion of it, now of great value, remained undisposed of, and the purposes of said trust as to that remain unperformed.

That there is a large balance due the estate of said Leonard for advances and disbursements made pursuant to the trust; that said Leonard left as heirs at his decease certain persons (named); that said heirs decline to act as trustees under the provisions of the declaration of trust.

Munroe Young, one of the persons interested, filed his answer, alleging substantially, — that all the trust estate of said Jones was fully administered by said Leonard and Charles; that money enough was received from the proceeds of said estate to meet all proper charges in the execution of the trust; that Leonard accepted the deed of Sept. 11, 1840, managed, and from time to time sold and conveyed portions of the land therein described until Aug. 29, 1854, when he conveyed the remainder to Charles Jarvis as by deed annexed; that after the decease of Leonard, Charles

managed and controlled both lots and sold portions of both, appropriating the proceeds to the liquidation of Leonard's account against the trust estate; that in 1863, expressing a desire to close up the trust estate in his lifetime, with this view, Charles Jarvis, in Sept. 1863, gave a bond to one Daniel P. Lake, to convey to him all the unsold land of the Theodore Jones estate for $6,685, if paid within thirty days; that Lake shew the land to this respondent; that Lake having refused to pay the money within the time named, the said Charles thereupon agreed by parol to sell said lands to this respondent for the same price, if paid within twenty days; that an extension of one week was subsequently given, during which time said Charles and this respondent. went together, upon and over all the land in both lots then unsold, when said Charles pointed out the boundaries of the unsold estate, comprising the second lot above mentioned; that subsequently and before Nov. 14, 1863, the parties again went upon the premises, when the said Charles repeated such representations, and caused a plan to be made, and exhibited it to this respondent, on which said second lot was laid down as included within the boundaries of the land bargained by the said Charles to this respondent; that relying upon said representations, he, on Nov. 14, 1863, paid said Charles $6,685, and received from the latter the deed hereunto annexed, as and for a deed of all the lands which he by parol had agreed to convey.

That then he had never heard of more than one conveyance from Jones to Leonard; that, three weeks thereafter, he heard for the first time of the deed of Sept. 11, 1840, and thereby learned that Charles' deed of Nov. 14, 1863, did not cover any portion of said second lot, whereupon he called upon said Charles for an explanation, who declared he supposed he was selling all said Jones' lands, but had learned otherwise; that, on Feb. 1, 1864, the said Charles executed and delivered to this respondent the deed of release annexed.

That, immediately after receiving the deed of Nov. 14,

1863, this respondent laid out the second lot into nine different parcels, and, prior to Dec. 6, 1863, he sold and conveyed, by deed of warranty, each of said parcels to *bona fide* purchasers; that, by virtue of the deed of release of Feb., 1864, the title has vested in this respondent's grantees above named, and that the heirs of Leonard Jarvis have no interest or claim in or to any part or parcel thereof.

That said Leonard conveyed to said Charles said second lot in execution of his trust, with the intent and mutual understanding that said Charles should take, hold, manage and dispose of the same in execution of said trust; that said Charles always managed said second lot as part of said trust, and, when he sold it, he accounted for the proceeds thereof as trust property; that said Leonard's estate has received the full benefit thereof, and that they were sufficient to pay all just claims against said trust estate.

All the essential parts of the several instruments set forth in the petition and answer appear in the opinion.

*C. J. Abbott, pro se.*

*Rowe & Appleton*, for the respondents.

APPLETON, C. J.—On 20th June, 1825, Theodore Jones conveyed to Leonard Jarvis certain premises therein described in trust, "and subject to the covenants and agreements contained in certain articles of agreement between the said Theodore and Leonard bearing even date with these presents." This deed was signed by Catherine W. Jones, his wife. The declaration of trust, signed by both parties, describes the purposes and objects of the trust, confers upon said Jarvis entire control in the management of the trust estate, and provides that he shall appoint by will immediately a trustee, who shall succeed in case of his death, and shall manage and dispose of the trust estate then remaining, in accordance with such declaration. But no authority is given to said Jarvis to appoint a successor by deed during his life. It provides that he may make advances upon the credit of the trust estate for its improvement as

well as for the support of the *cestui que trust*, that he shall keep a regular and distinct account of his doings and sales with said trust estate, to the end that it may not be blended with his own estate," and that "in case of the death of said Jones he will divide and distribute what he may have of the estate, whether it be *land*, *buildings*, money or securities, or the value thereof as he shall deem proper, among said Jones' heirs in proportion as said Jones shall direct in writing, whether it be by will or otherwise. But, should said Jones leave no written direction or will," said Jarvis is to "distribute and divide the aforesaid estate among said Jones' heirs, according to the law of descents of the State of Maine, &c., * * it being understood that the heirs are not to receive their shares in either of the above mentioned events until they marry or arrive at the age of twenty-one years, excepting so much as may be necessary for their maintenance and education," &c.

On 25th June, 1825, Leonard Jarvis made his will accordingly, and by it appointed Charles Jarvis his successor as trustee, and devised to him in trust the land specifically described in the deed of June 20, 1825.

On 11th September, 1840, said Jones conveyed to Leonard Jarvis, "in trust for the purposes mentioned in a certain deed made by me and Catherine Winthrop Jones, my wife, to said Jarvis, and bearing date June 20, 1825," * * a certain tract of land, the boundaries of which are given, "to have and to hold the aforegranted premises *in trust*, as aforesaid, with all the privileges and appurtenances thereof to the said Leonard Jarvis, his heirs and assigns forever."

By accepting this deed and acting under it, he became a trustee and held the estate as such, and not in his own right.

The deeds of June 2, 1825, and of Sept. 11, 1840, were immediately recorded.

On 29th Aug., 1854, Leonard Jarvis, by deed of warranty, and for the consideration of one dollar, conveyed to Charles Jarvis certain lands described as follows : — "All *my* right,

title and interest in and unto any lands lying in the towns of Dedham and Ellsworth, in the county of Hancock, and also in the several towns in which Jarvis gore, so called, in the county of Penobscot, has been subdivided; to have and to hold the aforementioned premises, with all the privileges and appurtenances thereunto belonging, to the said Charles Jarvis, his heirs and assigns, to his and their use and behoof forever," with the usual covenants contained in a deed of warranty.

The trust estates described in the deed of June 20, 1825, and in that of Sept. 11, 1840, from Jones to Jarvis, were situated in Ellsworth. It is insisted that, as the will of Leonard Jarvis, dated June 25, 1825, does not confer any title upon Charles Jarvis to the premises conveyed to him on Sept. 11, 1840, that the deed of Aug. 29, 1854, conveys to said Charles the trust estate which Leonard had by virtue of the deed of Jones to him of Sept. 11, 1840.

But, is it so? Undoubtedly a trustee, in violation of his trust, may convey the trust estate and thus transfer the mere legal title. But, before he can be convicted of such a gross breach of duty, it must appear that he intended thus fraudulently to convey. In the case at bar, it is apparent, we think, that there was no such intention and no such conveyance. The grantor does not describe himself as trustee nor the premises conveyed as trust estate. The trust estate is not described by metes and bounds nor by any language specifically referring to it. The estate conveyed is, — "all my right, title and interest," &c., but, in the ordinary use of words, these would not be held to relate to lands in trust. They include all held in his own right. They exclude all held in trust. The "right, title and interest" was to "any lands lying in the towns of Dedham and Ellsworth, in the county of Hancock, and also in the several towns in which Jarvis gore, so called, in the county of Penobscot, has been subdivided." But the land held in trust was situated in Ellsworth, and not in the other places to which the deed refers. The deed would seem to refer to what he might right-

fully convey, (" my right, title and interest,") and not to what he could only wrongfully as trustee. By the deed of trust he was to see that the trust estate was not " blended with his own estate." But, if this deed conveyed the trust estate, then, in the conveyance, his own and the trust estate were blended together. Further, the consideration expressed for this large estate is but one dollar, and the conveyance of so much property for so trifling a sum would be a gross breach of trust, which is not to be presumed. As the deeds of trust were on record, the taking of such a deed, if it conveyed the trust estate, would be a fraud on the part of the grantee. Undoubtedly a court of equity would hold such fraudulent grantee as holding in trust, but that would not lessen the fraud, if such was the intention of the parties and is the true construction of the instrument. The description in the deed is fully and better satisfied by excluding from its operation all trust property, and holding it to convey his (my) estate only, and not that belonging beneficially to others.

It is obvious that Leonard Jarvis did not intend to convey this land *in trust*, because he does not so say. If he did, the deed of trust to him gave him no authority to appoint a trustee by deed.

Further, if this language were held to convey the lands conveyed by the deed of trust of Sept. 11, 1840, from Theodore Jones to Leonard Jarvis, it must be regarded as equally conveying those in the trust deed of June 20, 1825, between the same parties. The land first conveyed to Leonard Jarvis by Jones was as much his as that to which he acquired a title by his second conveyance. In other words, if Charles Jarvis, by the deed of Aug. 29, 1854, acquired a title to any of the trust estates, he did to the whole. If so, then nothing was acquired by the will, for he had the whole by this deed. So that Leonard Jarvis, without right, in violation of his duty as trustee, conveyed the whole estate in fraud of the *cestui que trusts*, or for the purpose of

making a new trustee, — either of which would have been a gross wrong.

But this is not pretended. The position is, that the first estate in trust passed to Charles Jarvis by will, and the second by deed, under the clause "all *my* right, title and interest." But the word "*my*" just as much embraces the first estate conveyed in trust as it does the second.

It is apparent that Charles Jarvis, neither at the date of the deed of Leonard. Jarvis to him of Aug. 29, 1854, nor since, has claimed any portion of the trust estate conveyed to Leonard by the two deeds of trust, under and by virtue of the clause "my right, title and interest." His claim to the trust estate was under the will of Leonard Jarvis, and under that alone. To be sure, he undoubtedly supposed in the first instance, that both estates in trust were devised to him by the will of Leonard Jarvis, but, when he found he was mistaken as to this, he ceased to make any claim to the tract conveyed to Leonard Jarvis by the trust deed of. Sept. 11, 1840. Accordingly we find, as trustee, he conveyed to Munroe Young by deed of warranty on Nov. 14, 1863, all the unsold portion of the trust estate to which he had title as trustee under the will of Leonard Jarvis, to which reference had been had. On the first day of February, 1864, he released and quitclaimed to said. Young all his right, title or interest in his own right, or as devisee, trustee or heir, under the will of Leonard Jarvis, to the premises mentioned in the deed of trust of Sept. 11, 1840, "but not meaning or intending to prejudice or interfere with any right or interest which the heirs of Leonard Jarvis, or the heirs of the said Theodore Jones may have in and to the above described premises." It is thus apparent that Charles Jarvis disclaimed all intention of conveying the trust estate which was undevised, and that Munroe Young, by receiving the deed, was aware of such disclaimer. Indeed, there is no reference whatever to the deed of Aug. 29, 1854, by which "the right, title and interest" in certain lands was conveyed to the grantee therein, but, in the deed to Young, the grantor

expressly defines what he conveys, thus, "hereby meaning and intending to convey to said Young all the right, title and interest, if any, I may have in my own right as trustee as aforesaid,—thus making it manifest that the forced construction now attempted to be put upon the deed of Aug. 29th, was never sanctioned by the grantor.

The construction that the words, " all my right, title and interest," will not convey trust estate, when the grantor does not act as trustee in such conveyance, is not merely in accordance with the obvious meaning of the words used, and with the intention of the grantor in using them,—but it is equally in accordance with the decisions of the Courts.

An attachment of all the debtor's right, title and interest, in the absence of notice, holds the interest of the debtor in all lands of which he has record title. But, if he holds land as trustee and the trust is apparent of record, an attachment of his interest would be void and ineffectual, for the obvious reason that the estate attached is not his. *Warren* v. *Ireland*, 29 Maine, 62. An estate held only in trust will not be affected in equity by the judgment, or other debts or engagements, or by the bankruptcy or insolvency of the trustee. Hill on Trustees, 269.

A conveyance of " all my right, title and interest" passes, not what the grantor has of record, but what he has of right. It passes only the right, title and interest he has at the time of the conveyance. *Coe* v. *Persons unknown*, 43 Maine, 437. " The reasons," observes HATHAWAY, J., in the case last cited, " why the words, ' all the right, title and interest,' when used by an officer in his return of an attachment of real estate, have an effect different from and more enlarged than that which they have when used by a grantor in a deed of conveyance, are stated by the Court in *Roberts* v. *Bourne*, 23 Maine, 165."

As an attachment of the debtor's right, title and interest, would not hold the estate which the debtor held in trust, the trust being apparent of record, much more will it not pass trust estate in a deed, when the grantor does not de-

scribe himself as trustee, nor the estate as trust estate, and when such a construction would make him guilty of a violation of his trust.

In *Raikes* v. *Anderson*, 1 Starkies' R., 155, the premises, intended to be conveyed by a deed of mortgage, are described as the defendant's undivided moiety, and the deed afterwards professes to convey *all* the defendant's estate, &c., in the premises. This conveys the moiety only, to which the defendant was entitled in his own right, and not one-third part of the same premises in which he was interested as co-trustee with the lessors of the plaintiff. In *Merrill* v. *Wilson*, 28 Maine, 58, the general partner, in a special partnership, conducted in his name, made a general assignment of *his* property for the benefit of creditors, without using any words to show that partnership property was intended to be assigned. The Court held that the partnership property did not pass thereby. "When he makes a conveyance of property in his name and under his signature, how can it be known," asks SHEPLEY, J., in delivering the opinion, "that the partnership property is intended to be conveyed, unless there be something found in the instrument to determine that it was? * * When all the language used in the instrument of conveyance is appropriate for the conveyance of one's private property, and there is nothing in it by which it can be determined that he acted in any other than an individual capacity, that must be a conveyance of his own private property." The same principle is equally applicable when the grantor holds an estate in trust.

The conclusion is, that Leonard Jarvis by the deed of Aug. 29, 1854, neither conveyed nor intended to convey any estate held by him in trust, but only those lands held by himself in his own right and to which he could justly apply the possessive pronoun "my."

As the will of Leonard Jarvis, of June 25, 1825, refers to and specifically devises to Charles Jarvis only the land conveyed to him in trust by Theodore Jones by deed dated June 20, 1825, it is apparent that Charles Jarvis acquired

no right by deed nor by will.to the trust estate conveyed to Leonard Jarvis by deed dated Sept. 11, 1840, but that the same remained in him undevised, and upon his death descended to his heirs at law.

The trust estate conveyed to Leonard Jarvis, on June 20, 1825, by Jones, was by him devised to Charles Jarvis, in trust, by whom the same was sold. This portion of the trust estate is no way involved in the present litigation.

As has been seen, the estate conveyed to Leonard Jarvis, Sept. 11, 1840, was held by him under the declaration of trust of June 20,. 1825. He held it as trustee. He never sold it. He did not devise it. It descended to his heirs, who hold the legal title subject to the same trusts as when the fee was in their ancestor. As the trust was apparent upon the face of the deed to him and was upon record, whoever acquired the legal title would, having notice, be bound by the trusts referred to in the original conveyance from Theodore Jones. "If a devisor or settlor appoint a trustee, who either dies in the testator's lifetime, or disclaims, or is incapable of taking the estate, or if the trustee otherwise fail, the trust is not defeated, but fastens on the conscience of the person upon whom the real estate has descended." Levin on Trusts, 693. "I take it," said Lord Chief Justice WILMOT, "to be a fundamental principle in equity, that the trust follows the legal estate wheresoever it goes, except it come into the hands of a purchaser for a valuable consideration without notice." *Attorney General* v. *Lady Downing*, Wilm., 21. "Upon the death of one of the original trustees, the whole estate, whether real or personal, devolves upon the survivors, and so on continually to the last survivor. Upon the death of a sole or last survivor, who has made any disposition of the trust estate, it devolves, according to its legal quality, upon his heir at law, a personal representative. As a general rule, the surviving trustee, or trustees, or other personal representative of the sole or last surviving trustee, are as fully competent to act

in the administration and management of the trust estate as the trustees originally appointed." Hill on Trustees, 303.

The fee of the land conveyed to Leonard Jarvis, on Sept. 11, 1840, is in his legal heirs. The *cestui que trusts* are the heirs of Theodore Jones. The heirs of Jarvis hold the fee in trust. If they neglect or refuse to execute the trusts upon which they hold the legal estate, they may, it would seem, with the assent of the *cestui que trusts*, and any others interested, convey the trust estate to a new trustee, mutually agreed upon, subject to the same trusts as declared in the original deed from Theodore Jones to Leonard Jarvis. The estate of the latter would be entitled to all its rights under the declaration of trusts of June 20, 1825.

Leonard Jarvis, in his lifetime, made large advances for the purpose of carrying out the objects of the trust, and in pursuance of its provisions. Those advances were made upon the credit of the trust property and have never been paid, as the bill alleges, and are still outstanding against the same. The plaintiff is the administrator on the estate of Leonard Jarvis. The heirs of Jarvis, upon whom the legal estate has devolved, but clothed with the trust, decline or refuse to act. The administrator has accordingly filed this bill, seeking for the appointment of a new trustee. "A bill for the appointment of new trustees may be filed, either by the parties beneficially interested in the trust estate against the existing trustees, and this is the more usual course; or, if circumstances require it, by the existing or continuing trustees, against their *cestui que trusts;* or again, one or more of several trustees may join as co plaintiffs with the *cestui que trusts* in a suit for the removal of one of the trustees and the appointment of another in his place." Hill on Trustees, 194. "All the parties beneficially interested must be made parties to the suit for the appointment of a new trustee." *Ib.*, 195.

The *cestui que trusts* are interested in the discreet management, as well as in the proceeds of the trust estate, and in the settlement of the claims of the estate of Leonard

Jarvis against the same. The heirs of Jarvis hold the legal estate. They have refused to act. They should be parties to a suit in which they may be decreed to convey the legal estate, for it would not pass to the new trustee upon his appointment, but would remain in his heirs until conveyed by them. *Greenleaf* v. *Queen*, 1 Pet., (U. S.) 139. The *cestui que trusts* should likewise be parties, as they are mainly interested in the judicious disposition of the property if sold, and that the same be conveyed to them, when the objects of the trust shall have been accomplished.

Leonard Jarvis, in his will, after describing the trust estate, and the covenants and agreement of the trust deed, devises the trust estate as follows : — " Now, to the end that future difficulties in the management of said estate to said Jones or his heirs, as well as in compliance with his covenants and agreements aforesaid, I, the said Leonard Jarvis, give, grant, bequeath, devise and convey the above described estate as it may be at the time of my decease, unto Charles Jarvis of Surry, in said county, Esquire, upon the aforesaid terms and conditions and for the aforesaid purposes, — he paying or causing to be paid unto my heirs, executors or administrators the sum, if any, due and owing my estate from the above described estate, held by me as aforesaid ; in case the said Charles neglects or refuses to accept the trust within sixty days after my decease, I then give, grant, devise, bequeath and convey the same unto Edward S. Jarvis of Surry, in said county, upon the aforesaid terms and conditions, and for the aforesaid purposes," &c., &c.

It is insisted that Charles Jarvis, by accepting the trust, was bound to pay whatever sums the trust estate might owe the estate of Leonard Jarvis, irrespective of the value of the trust estate, or of the amount he might receive therefrom, and consequently that nothing is due from the trust estate, but that Charles is held to pay the entire indebtedness thus arising. We think not. The fair meaning is, that Charles

Jarvis shall see that the funds coming into his hands from the trust estate shall be appropriated to the payment of the charges upon the same, — not that he should pay above the value of the estate which should come into his hands. Nobody would accept a trust estate worth five thousand dollars upon condition of paying charges against such estate to the amount of double that sum. Nor would any one think of asking another to accept a trust upon such terms.

Whatever may be the equitable rights of Young and the other purchasers from Charles Jarvis of portions of the premises conveyed to Leonard Jarvis, by deed dated Sept. 11, 1840, as against the trustee to be appointed, they are not before us for adjudication and cannot now be determined.

The bill to be dismissed without costs and without prejudice, unless plaintiff move at *nisi prius* for its amendment.

CUTTING, KENT, BARROWS and DANFORTH, JJ., concurred.